UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
IN THE MATTER OF
THE EXTRADITION OF
MARIO ENRIQUE LALAMA GOMEZ
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**MEMORANDUM AND ORDER**
24-MJ-458 (LKE)

**LARA K. ESHKENAZI**, United States Magistrate Judge:

The United States of America (the "Government"), fulfilling its treaty obligation to the Republic of Ecuador ("Ecuador"), filed a complaint on July 10, 2024, requesting that Mario Enrique Lalama Gomez ("Lalama Gomez") be detained and extradited.  (Complaint ("Compl."), ECF No. 1.)  Lalama Gomez has moved for release on bond pending the resolution of extradition proceedings.  (Motion for Bond ("Mot. for Bond"), ECF No. 12-1.)  A status conference was held on Augst 22, 2024, and the parties' arguments have been considered.  (*See* August 23, 2024 ECF Minute Entry.)  For the reasons discussed herein, Lalama Gomez's motion for bond is denied.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Complaint alleges as follows: "On or about November 14, 2017, Ecuadorian authorities received a letter from a school in Ecuador, reporting that one of their students, F.G.J.A. (the Victim), who was then 10 years old, was the victim of sexual violence by [Lalama Gomez], who was the former partner of the Victim's mother, M.G.A.M. (the 'Victim's Mother')."  (Compl., ECF No. 1, ¶ 6.)  According to the Complaint, "[t]he Victim told the employees that from approximately August 2016 through September 2017, while the Victim and the Victim's mother lived with [Lalama Gomez], [he] entered the Victim's room at night to obscenely touch her private parts, her breasts, and her vagina."  (*Id.* ¶ 6a.)  The Complaint further alleges that Lalama Gomez threatened to kill the Victim's mother and brother if she ever told anyone about the abuse.  (*Id.* ¶¶

6c, 9b.)  As a result of the alleged sexual abuse, the Complaint states that the Victim has suffered emotional harm that has manifested physically, including sleepwalking, headaches, stomachaches, and excessive sweating.  (*Id.* ¶ 10.)

Lalama Gomez has dual U.S. and Ecuadorian citizenship.  (*Id.*  ¶ 15; *see also* Mot. for Bond, ECF No. 12-1, at 4.)  A Criminal Complaint was filed against Lalama Gomez on November 17, 2017, and an Order was entered on December 1, 2017, to put Lalama Gomez on notice of the Criminal Complaint.  (ECF Nos. 15-1, 15-2.)  On January 19, 2018, Lalama Gomez submitted a letter, denying the charges against him and indicating that he had retained two defense attorneys.  (ECF. No. 15-3.)  Lalama Gomez left Ecuador in April 2018 and has yet to return.

On September 20, 2018, an Ecuadorian judge issued a warrant for Lalama Gomez's arrest for the crime of sexual abuse, in violation of Article 170 of the Ecuadorian Criminal Code. (Compl., ECF No. 1, ¶¶ 1, 3.)  On September 22, 2021, the Ecuadorian government submitted a formal extradition request to U.S. officials for Lalama Gomez.  (*See* Lindsay Decl., ECF No. 3-1, ¶ 3; Extradition Request, ECF No. 3-1, at 10.)  On July 10, 2024, the undersigned magistrate judge issued an arrest warrant for Lalama Gomez.  (Compl., ECF No. 3.)  On July 16, 2024, Lalama Gomez was arrested in Islip Terrace, New York, taken into custody in the Eastern District of New York, and arraigned before Magistrate Judge Lee Dunst. (July 16, 2024 ECF Minute Entry.)  At the time, Judge Dunst ordered that Lalama Gomez be detained.  (ECF. No. 8.)

On August 7, 2024, Lalama Gomez filed a motion for bond.  (*See* Mot. for Bond, ECF No. 12.)  On August 13, the Government filed a response in opposition to Lalama Gomez's motion for bond.  (First Resp. in Opp'n, ECF No. 13.)  On August 20, 2024, Lalama Gomez filed a reply to the Government's response.  (Reply to Response, ECF No. 14.)  On August 22, 2024, the Court

held a bond hearing and reserved decision as to the bond application and directed the parties to provide a supplemental letter addressing gaps in the factual record.  (*See* August 23, 2024 ECF Minute Entry.)  On September 10, 2024, the Government submitted a letter responding to the Court's factual inquiries.  (*See* ECF No. 15.)

## **DISCUSSION**

### I.    **Legal Standards**

In federal criminal litigation, pretrial release is governed by the United States Bail Reform Act of 1984, which creates a presumption in favor of a defendant being released pending trial unless the Government meets its burden to show that the defendant is a flight risk or a danger to the community.  *See* 18 U.S.C. §§ 3141, 3142(b).  However, in the extradition context, the Bail Reform Act does not apply because an extradition proceeding is not a criminal prosecution for violations of U.S. law.  *See* 18 U.S.C. §§ 3181 *et seq*.; 18 U.S.C. §§ 3141(a), 3142, 3156(a)(2); *Austin v. Healey*, 5 F.3d 598, 603 (2d Cir. 1993) ("We have repeatedly noted ... that an extradition hearing is not a criminal prosecution....").

In contrast, the statutes governing extradition do not provide for bail.  Indeed, "[i]n extradition proceedings[,] the presumption is against bail because of the nation's foreign relations interest in successfully producing extradited persons."  *United States v. Messina*, 566 F. Supp. 740, 742 (E.D.N.Y. 1983); *see also Borodin v. Ashcroft*, 136 F. Supp. 2d 125, 128 (E.D.N.Y. 2001) ("There is a presumption against bail in extradition cases, because of the important national interest in successfully fulfilling our obligations under extradition treaties with other countries.").

A presumption against pre-extradition release exists because if the accused were to be released and flee, forfeiture of a bond "would hardly meet the international demand" and could cause the U.S. government "serious embarrassment."  *Wright v. Henkel*, 190 U.S. 40, 62 (1903);

*see also In re Garcia*, 615 F. Supp. 2d 162, 166 (S.D.N.Y. 2009) (observing that in extradition proceedings, "[t]he rationale for the presumption against bail is the United States Government's overriding interest in complying with its treaty obligations.").

For these reasons, individuals facing potential extradition are typically denied bail in the absence of "special circumstances." *Wright*, 190 U.S. at 63; *see also United States v. Leitner*, 784 F.2d 159, 160 (2d Cir. 1986) (per curiam); *Salerno v. United States*, 878 F.2d 317, 317 (9th Cir. 1989); *In re Extradition of Kapoor*, No. 11-MJ-456 (RML), 2011 WL 2296535, at *2 (E.D.N.Y. June 7, 2011). Such special circumstances arise "'only in the most pressing circumstances, and when the requirements of justice are absolutely peremptory.'" *Leitner*, 784 F.2d at 160 (quoting *In re Mitchell*, 171 F. 289, 289 (S.D.N.Y. 1909)). Special circumstances include those where a defendant has:

> "(1) raised substantial claims which have a high probability of success on the merits; (2) suffered a serious deterioration of health; (3) shown that there is an unusual delay in the appeals process; (4) shown that the extradition proceeding will be unusually long and complex; (5) shown that the requesting country would grant bail in a comparable extradition case; and (6) shown by clear and convincing evidence that bail is available for the substantive offense in the requesting country."

*In re Kapoor*, 2011 WL 2296535, at *3 (quoting *Duca v. United States*, No. 95-CV-713 (DGT), 1995 WL 428636, at *15 (E.D.N.Y. July 7, 1995), *aff'd sub nom. Lo Duca v. United States*, 93 F.3d 1100 (2d Cir. 1996)). In addition, "'[r]elated to the issue of delay in extradition proceedings, courts have found special circumstances when there is a lack of any diplomatic necessity for denying bail.'" *Id.* (alteration and quotation marks omitted) (quoting *United States v. Castaneda-Castillo*, 739 F. Supp. 2d 49, 56 (D. Mass. 2010)). "Special circumstances must be extraordinary and not factors applicable to all defendants facing extradition." *In re Extradition of Mainero*, 950 F. Supp. 290, 294 (S.D. Cal. 1996) (citing *In re Extradition of Smyth*, 976 F.2d 1535, 1535–36 (9th

Cir. 1992)); *see also In re Extradition of Kyung Joon Kim*, No. 04-CV-3886 (ABC) (PLA), 2004 WL 5782517, at *2 (C.D. Cal. July 1, 2004); *In re Extradition of Vladimir Blasko*, No. 11-MC-0067 (DAD) (SAB), 2018 WL 3691859, at *4 (E.D. Cal. Aug. 1, 2018).

In addition, a person seeking release in the extradition context must also establish that they are not a flight risk or a danger to the community. *See, e.g., In re Kapoor*, 2011 WL 2296535, at *2 (citing *United States v. Ramnath*, 533 F. Supp. 2d 662, 665 (E.D. Tex. 2008)). A person facing extradition must show that they are not a risk of flight or a danger to the community by clear and convincing evidence. *In re Extradition of Mednard*, No. 21-MJ-39 (RER), 2021 WL 1264260, at *2 (E.D.N.Y. Apr. 5, 2021).

## II.     Analysis

### A.  Risk of Flight

The evidence provided by both parties indicates that Lalama Gomez is a flight risk. First, Defendant Lalama Gomez has avoided returning to Ecuador to face the pending charges. According to the supplemental documents provided by Ecuador and submitted by the Government in response to the Court's inquiries at the bail hearing, Lalama Gomez knew about the charges pending against him since at least January 19, 2018, months before he left the country in April 2018. (ECF No. 15-3.) Indeed, he participated in his own defense by retaining two attorneys and denying the charges against him. *Id.* The Second Circuit has held that there is no "meaningful distinction" between an individual who flees a country to avoid charges and one who is outside the country but chooses not to return. *Jhirad v. Ferrandina*, 536 F.2d 478, 483 (2d Cir. 1976).

Moreover, if convicted, Lalama Gomez is facing a potential sentence of five to seven years of imprisonment (ECF No. 15), providing another significant incentive to flee. Lastly, the applicable statute of limitations is scheduled to lapse in September 2025. (ECF. No. 15.) Absent

a tolling provision—and neither party has indicated that any tolling provisions would apply— Lalama Gomez has a significant motivation to evade custody for a year in order to avoid prosecution in Ecuador.

Lalama Gomez, citing *In re Barker*, 2023 WL 1967576 (E.D.N.Y. Feb. 13, 2023), argues that his flight risk is minimal because "he has developed substantial ties to the community", suffers from "many health issues[,] … has been living openly under his own name for decades", and is willing to forfeit his travel documents.  (ECF No. 12-1 at 3.)  While *In re Barker* is facially similar, a closer reading of the facts indicates that it is inapposite to the circumstances present here.  In *In re Barker*, the French government was seeking to extradite the defendant to France due to the defendant's role in a drug trafficking ring which brought cocaine from French Guiana and Suriname to France in 1998.  2023 WL 1967576, at *1.  The defendant moved to New York in 2003, became a naturalized citizen, and travelled internationally, including at least four trips to Guyana, under his own name.  *Id.* at *2.   Unlike the defendant in *In re Barker*, Lalama Gomez is charged with an inherently violent crime—sexual assault of a child.  Further, Lalama Gomez left Ecuador several months after learning of the criminal charges filed against him, and he has not returned to Ecuador.  The nature of the charges combined with Lalama Gomez's decision to leave Ecuador several months after learning of the charges support the Court's finding that there is a significant risk that Lalama Gomez will attempt to flee if released on bail.

Defendant also argues that he is not a flight risk because he "is willing to forfeit travel documents and passports, remain outside a prescribed radius of all airports, and be electronically monitored."  (ECF No. 12-1 at 4.)  While the Government does not address this point in their papers, the decision in *Matter of Extradition of Leon Heras*, 2022 WL 3909174, at *4 (E.D.N.Y. Aug. 31, 2022) is instructive.  There, Magistrate Judge Merkl, relying on Second Circuit precedent,

held that restrictive bond conditions are "neither possible nor appropriate in the extradition context" because "'[t]he sort of electronic surveillance suggested by the defendant [] … can be circumvented.'"  *Id.* (quoting *United States v. Millan*, 4 F.3d 1038, 1048-49 (2d Cir. 1993).  Based on the determination that Lalama Gomez has substantial incentive to flee, the "complex release conditions … do not provide the Court with the assurance" that he will appear at his extradition hearing.  *See id.*  Therefore, based on the totality of circumstances, the Court finds that Lalama Gomez is a flight risk.

### B.  Danger to the Community

The Court also finds that Lalama Gomez is a danger to the community.  He is accused of sexually assaulting a child, a serious accusation both in the United States and in Ecuador.  Relying again on *In re Barker*, Lalama Gomez argues that he is not a danger to the community because he "has no criminal record anywhere in the world."  As discussed above, however, that case is readily distinguishable based on the crimes charged.  There, the Court held that the defendant was not a danger to the community because "[t]he crimes at issue were non-violent *and* [the defendant] has no criminal record since arriving in the United States."  *In re Barker*, 2023 WL 1967576, at *3 (emphasis added).  By contrast, the crime at issue here—sexual assault of a child—is an inherently violent crime.

### C.  Special Circumstances

Lalama Gomez has also failed to establish the existence of special circumstances warranting Lalama Gomez's release.  To determine whether special circumstances are present courts typically "consider a confluence of factors[.]" *Matter of Extradition of Leon Heras*, 2022 WL 3909174, at *4.

Lalama Gomez argues that two special factors warrant granting his motion for bail.  First, Lalama Gomez asserts that the delay between the filing of criminal charges and the extradition request establish a lack of diplomatic necessity for his detention.  (ECF No. 12-1 at 5-6.)  "Courts have found that if a requesting country has delayed seeking the extradition of a person in the United States, it may show that a particular individual's prosecution is not a priority to that country, undercutting the diplomatic necessity for detention."  *Matter of Extradition of Leon Heras*, 2022 WL 3909174 at *5 (citing cases).  Courts will typically find a lack of diplomatic necessity if the requesting government unduly delays submitting an extradition request after commencing an investigation.  *E.g.*, *In re Extradition of Kapoor*, 2011 WL 2296535, at *3 (E.D.N.Y. June 7, 2011).  However, "a lack of diplomatic necessity finding requires a sufficiently unique set of circumstances, such as ample delays unrelated to the usual course of an investigation or charging."  *Matter of Extradition of Leon Heras*, 2022 WL 3909174, at *6.

Here, Ecuadorian authorities have been actively investigating the case since 2017.  Ecuador filed a Criminal Complaint against Lalama Gomez on November 30, 2017, and put him on notice of the complaint on December 1, 2017.  (ECF No. 15-1.)  Lalama Gomez signed a letter denying the charges on January 19, 2018, four months before leaving Ecuador.  (ECF No. 15-3.)  The Ecuadorian judge issued an arrest warrant in September 2018, five months after Defendant Lalama Gomez fled Ecuador.  (ECF No. 12.)  The Ecuadorian Court then requested the commencement of extradition proceedings twice: first on November 5, 2020, and then again on June 8, 2021.  (ECF No. 13.)  Based on this record, it is evident that Ecuador has been actively pursuing Lalama Gomez's arrest and extradition, and the delays were nothing more than "[t]he normal passage of time inherent in the litigation process," which is not a special circumstance.  *United States v. Kin-Hong*, 83 F.3d 523, 525 (1st Cir. 1996).  *See also Matter of Extradition of Drumm*, 150 F. Supp.3d

92, 98 (D. Mass. 2015) (stating "not all delays in prosecution show a lack of diplomatic necessity" and denying defendant's motion for bond).

 None of the cases cited by Defendant Lalama Gomez support a different result.  First, he cites M*atter of Extradition of Leon Heras*, but in that case the Court denied bail and determined that Ecuador did not delay seeking extradition of the defendant eight months after an arrest warrant had been issued.  *See Matter of Extradition of Leon Heras*, 2022 WL 3909174, at *8.  Lalama Gomez then cites *In re Extradition of Kapoor*, 2011 WL 2296535, at *3 (E.D.N.Y. June 7, 2011), in which the Court granted bail for a defendant who, unlike Lalama Gomez, committed a non-violent, financial crime.  *Id.*  Defendant Lalama Gomez's reliance on *In re Extradition of Chapman*, 459 F. Supp. 2d. 1024 (D. Hawaii 2006) is similarly misplaced.  There, the defendants also committed a non-violent crime and the foreign jurisdiction, Mexico, waited three years after the underlying offense to submit an extradition request.  *Id.* at 1027.  Lastly, Defendant Lalama Gomez cites *United States v. Bowman*, 2020 WL 835342, (S.D. Cal. Feb. 20, 2020).  In *Bowman*, the court found a lack of diplomatic necessity as a special circumstance when Scotland's investigation into a fifty-year-old sexual assault case had several unexplained multiyear delays between witness interviews and the final extradition request.  *Id.* at *5-7.  By contrast, the Ecuadorian authorities issued an arrest warrant less than a year after they were notified of Lalama Gomez's alleged conduct.  As such, Lalama Gomez fails to establish lack of diplomatic necessity as a special factor warranting bail.

 Second, Lalama Gomez claims that his health conditions warrant granting his motion for bail.  (ECF No. 12-1 at 6-7.)  Specifically, he references several illnesses including a heart condition that required treatment at a hospital during his detention at the Metropolitan Detention Center.  (*Id.*).  The fact that Lalama Gomez received treatment during his detention, however,

undercuts his argument for release. "Special circumstances might . . . be found if a health emergency could be established which could only be treated while a detainee was on bail." *Matter of Extradition of Hamilton-Byrne*, 831 F. Supp. 287, 290-91 (S.D.N.Y 1993); *see also Salerno v. United States*, 878 F.2d 317 (9th Cir. 1989); *United States v. Taitz*, 130 F.R.D. 442 (S.D. Cal. 1990). As long as health issues can be dealt with while in custody, they cannot provide the basis for a special circumstance warranting release. *See Matter of Extradition of Hamilton-Byrne*, 831 F. Supp. at 290-91 (S.D.N.Y 1993) (declining to find special circumstance for potentially serious health problems, noting "[w]ere health problems a basis for release, both actual and feigned illness could rapidly empty custodial facilities."). There is nothing in the record before this Court indicating that Lalama Gomez's health issues are not being appropriately addressed in custody.

Accordingly, the Court finds there are no special circumstances justifying granting Lalama Gomez's bail application, and Lalama Gomez has failed to meet his burden of establishing by clear and convincing evidence that he is neither a flight risk nor a danger to the community.

## CONCLUSION

For the foregoing reasons, Lalama Gomez's Motion for Bond is **DENIED**.