UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
IN THE MATTER OF
THE EXTRADITION OF                     <u>MEMORANDUM AND ORDER</u>
MARIO ENRIQUE LALAMA GOMEZ          24-MJ-458 (LKE)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**LARA K. ESHKENAZI**, United States Magistrate Judge:

  The United States of America (the "Government"), fulfilling its treaty obligation to the Republic of Ecuador ("Ecuador"), filed a complaint on July 10, 2024, requesting that Mario Enrique Lalama Gomez ("Lalama Gomez") be detained and extradited.  (Complaint ("Compl."), ECF No. 1.)  A hearing was held on October 8, 2024, and the parties' arguments have been considered.  (*See* October 8, 2024 ECF Minute Entry; Lalama Gomez's motion and reply [ECF Nos. 17, 20]; Government's motion and reply [ECF Nos. 16, 18].)  For the reasons discussed herein, the Court finds that Lalama Gomez is extraditable.

## **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

  The Complaint alleges as follows: "On or about November 14, 2017, Ecuadorian authorities received a letter from a school in Ecuador, reporting that one of their students, F.G.J.A. (the Victim), who was then 10 years old, was the victim of sexual violence by [Lalama Gomez], who was the former partner of the Victim's mother, M.G.A.M. (the 'Victim's Mother')."  (Compl., ECF No. 1, ¶ 6.)  According to the Complaint, "[t]he Victim told the employees that from approximately August 2016 through September 2017, while the Victim and the Victim's mother lived with [Lalama Gomez], [he] entered the Victim's room at night to obscenely touch her private parts, her breasts, and her vagina."  (*Id.* ¶ 6a.)  The Complaint further alleges that Lalama Gomez threatened to kill the Victim's mother and brother if she ever told anyone about the abuse.  (*Id.* ¶¶ 6c, 9b.)  As a result of the alleged sexual abuse, the Complaint states that the Victim has suffered

emotional harm that has manifested physically, including sleepwalking, headaches, stomachaches, and excessive sweating. (*Id.* ¶ 10.)

Lalama Gomez has dual U.S. and Ecuadorian citizenship. (*Id.* ¶ 15; *see also* Mot. for Bond, ECF No. 12-1, at 4.) A Criminal Complaint was filed against Lalama Gomez on November 17, 2017, and an Order was entered on December 1, 2017 to put Lalama Gomez on notice of the Criminal Complaint. (ECF Nos. 15-1, 15-2.) On January 19, 2018, Lalama Gomez submitted a letter denying the charges against him and indicating that he had retained two defense attorneys. (ECF No. 15-3.) Lalama Gomez left Ecuador in April 2018 and has yet to return.

On September 20, 2018, an Ecuadorian judge issued a warrant for Lalama Gomez's arrest for the crime of sexual abuse, in violation of Article 170 of the Ecuadorian Criminal Code. (Compl., ECF No. 1, ¶¶ 1, 3.) On September 22, 2021, the Ecuadorian government submitted a formal extradition request to U.S. officials for Lalama Gomez. (*See* Lindsay Decl., ECF No. 3-1, ¶ 3; Extradition Request, ECF No. 3-1, at 10.) On July 10, 2024, the undersigned magistrate judge issued an arrest warrant for Lalama Gomez. (Compl., ECF No. 3.) On July 16, 2024, Lalama Gomez was arrested in Islip Terrace, New York, taken into custody in the Eastern District of New York, and arraigned before Magistrate Judge Lee Dunst. (July 16, 2024 ECF Minute Entry.) At the time, Judge Dunst ordered that Lalama Gomez be detained. (ECF No. 8.)

On August 7, 2024, Lalama Gomez filed a motion for bond. (*See* Mot. for Bond, ECF No. 12), which the Court denied on September 18, 2024. (ECF No. 19.) On October 8, 2024, the Court held an evidentiary hearing pursuant to 18 U.S.C. § 3184. (*See* October 8, 2024 Minute Entry.) At the hearing, the Government submitted the following documentary evidence, which the Government had previously provided to the Court:

- The Declaration of Amy Lindsay, Attorney-Adviser to the United States Department of State, which attests that the Extradition Treaty between the United

2

States and Ecuador, signed on June 28, 1872, and supplemented on September 22, 1939, is in full force and effect between the United States and Ecuador. A copy of the June 28, 1872 Extradition Treaty and the Supplementary Extradition Treaty signed on September 22, 1939 (collectively the "Treaty") is attached to the declaration. ("Extradition Hearing Ex. A")

- Ecuador's September 22, 2021 request for extradition and supporting documents to the United States Department of State. ("Extradition Hearing Ex. B")

- Ecuador's January 17, 2024 supplemental submission for extradition to the United States Department of State, which conveys additional information submitted by the Ecuadorian National Court of Justice and reaffirms Lalama Gomez's extradition request. ("Extradition Hearing Ex. C")

- Ecuador's June 20, 2024 supplemental submission for extradition submitted to the United States Department of State, which conveys a new translation of the case files. ("Extradition Hearing Ex. D")

- Ecuador's September 6, 2024 submission regarding the Ecuadorian statute of limitations deadline to the United States Department of State, which notes that the Ecuadorian statute of limitations for sexual abuse will expire on September 19, 2025. ("Extradition Hearing Ex. E")

Pursuant to 18 U.S.C. § 3190, the Court admitted the Government's exhibits into evidence, with no objection from Lalama Gomez. The Court also heard argument from the Government and Defense Counsel for and against extradition.

## DISCUSSION

### I.   Legal Standards

"In the United States, extradition is governed by the federal extradition statute." *Cheung v. United States*, 213 F.3d 82, 87 (2d Cir. 2000) (citing 18 U.S.C. §§ 3181–3196). That statute provides that a magistrate judge may issue a warrant for the arrest of someone whose extradition is sought, so that the person charged may be brought before the Court "to the end that the evidence of criminality may be heard and considered." 18 U.S.C. § 3184. If, on such hearing, a magistrate judge "deems the evidence sufficient to sustain the charge under the provisions of the proper treaty

or convention," the magistrate judge "shall certify the same" to the Secretary of State. *Id.* "The judicial officer's inquiry is confined to the following: whether a valid treaty exists; whether the crime charged is covered by the relevant treaty; and whether the evidence marshaled in support of the complaint for extradition is sufficient under the applicable standard of proof." *Cheung*, 213 F.3d at 88 (citing *Lo Duca v. United States*, 93 F.3d 1100, 1103–04 (2d Cir. 1996)).

"An extradition hearing is not the occasion for an adjudication of guilt or innocence." *Melia v. United States*, 667 F.2d 300, 302 (2d Cir. 1981). "Instead, it is 'essentially a preliminary examination to determine whether a case is made out which will justify the holding of the accused and his surrender to the demanding nation.'" *Lo Duca*, 93 F.3d at 1104 (quoting *Ward v. Rutherford*, 921 F.2d 286, 287 (D.C. Cir. 1990)). "The judicial officer ... 'thus performs an assignment in line with his or her accustomed task of determining if there is probable cause to hold a defendant to answer for the commission of an offense.'" *Lo Duca*, 93 F.3d at 1104 (quoting *Ward*, 921 F.2d at 287).

Neither the Federal Rules of Evidence nor the Federal Rules of Criminal Procedure are applicable in extradition proceedings. *See* Fed. R. Crim. P. 1(a)(5)(A); Fed. R. Evid. 1101(d)(3). Evidence submitted at an extradition hearing is governed by 18 U.S.C. § 3190, which provides:

> Depositions, warrants, or other papers or copies thereof offered in evidence upon the hearing of any extradition case shall be received and admitted as evidence on such hearing for all the purposes of such hearing if they shall be properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped, and the certificate of the principal diplomatic or consular officer of the United States resident in such foreign country shall be proof that the same, so offered, are authenticated in the manner required.

Accordingly, hearsay evidence is admissible. *Melia*, 667 F.2d at 302.

While a relator may introduce evidence, a relator's right to present evidence in the context of an extradition hearing is significantly limited. *See Messina v. United States*, 728 F.2d 77, 80

4

(2d Cir. 1984). The relator may only introduce "testimony which explains rather than contradicts the demanding country's proof," *United States ex rel. Petrushansky v. Marasco*, 325 F.2d 562, 567 (2d Cir. 1963). The "intention is to afford [the relator] the opportunity to present reasonably clear-cut proof which would be of limited scope and have some reasonable chance of negating a showing of probable cause." *See In re Extradition of Sindona*, 450 F. Supp. 672, 685 (S.D.N.Y. 1978); *see also Shapiro v. Ferrandina*, 478 F.2d 894, 905 (2d Cir. 1973). "The extent of such explanatory evidence to be received is largely in the discretion of the judge ruling on the extradition request." *Sindona*, 450 F. Supp. at 685.

## II. Analysis

The three issues in dispute are (1) whether Lalama Gomez's proffered evidence is admissible; (2) whether the Treaty covers the offense of "sexual abuse" for which Ecuador seeks extradition; and (3) whether sufficient evidence exists for a finding of probable cause. The Court addresses each of these issues in turn.

### A. Admissibility of Lalama Gomez's Proffered Evidence

#### i. Proffered Expert Testimony

At the hearing, Lalama Gomez attempted to offer the "expert" testimony of Mr. Daniel Geovanny Altamirano Cordova, Lalama Gomez's Ecuadorian attorney. (ECF No. 21 at 1; Extradition Hearing Transcript ["Tr."] at 05:14-06:13.) According to Lalama Gomez, Mr. Cordova's proposed testimony would have included an explanation of the difference between the crimes of "sexual abuse" and "rape" under Ecuadorian law. (*Id.*) Lalama Gomez articulated the purpose of the proffered testimony would be to demonstrate that the subject crime is not covered by the Treaty. (*Id.*; ECF No. 21 at 1; ECF No. 26 at 2; ECF No. 28-1.)

5

The Court denied Mr. Cordova the opportunity to testify during the extradition hearing for two reasons. First, it became apparent at the hearing that Mr. Cordova had been hired by Lalama Gomez's family to represent him in Ecuador on the charges that are the subject of these extradition proceedings. (Tr. at 19:03-09, 20:09-10.) As such, Mr. Cordova has a vested interest in the outcome of these proceedings and is not an independent expert witness. (*See id.*) Second, even if Mr. Cordova were not been an interested witness, the rule prohibiting the admission of contradictory evidence would bar his testimony. *See In re Extradition of Mujagic*, 990 F. Supp. 2d 207, 215-16 (N.D.N.Y. 2013) (holding evidence of Bosnia & Herzegovina's Criminal Procedure Code "proffered by [the relator]" was inadmissible because it "purports to contradict [Bosina & Herezegovina's] evidence supporting its request for extradition."). The express purpose of the proffered testimony was to contradict the evidence submitted by the Government—the affidavit from Amy Lindsay, an Attorney-Advisor to the United States Department of State—to support a finding that the subject crime was covered by the Treaty. That is precisely the type of evidence that is not permitted.[1] *See Marasco*, 325 F.2d at 567.

---

[1] After the hearing, Lalama Gomez submitted an affidavit by Mr. Cordova, which purports to explain the difference between "sexual abuse" and "rape" under Ecuadorian law. (ECF No. 28-1.) While the Court reviewed the affidavit, Mr. Cordova's interpretation of Ecuadorian law as stated in the affidavit is not admissible for the same reasons his live testimony is not admissible. Even if the affidavit were admissible, the Court is obliged to give deference to the State Department's and the Ecuadorian National Court's interpretation of Ecuadorian law and finds these sources to be more credible and persuasive than those presented by Lalama Gomez. *See, e.g.*, *Sumitomo Shoji Am., Inc. v. Avagliano*, 457 U.S. 176, 184-85 (1982) ("Although not conclusive, the meaning attributed to treaty provisions by the Government agencies charged with their negotiation and enforcement is entitled to great weight."); *In re Extradition of Sacirbegovic*, No. 03 Cr. Misc. 01, 2005 WL 107094, at *14 (S.D.N.Y. Jan. 19, 2005) (determining "that the declaration of a Bosnian prosecutor should be given more weight than that of an American lawyer" but resolving issue on other grounds).

### ii. Video and Photographic Evidence

Lalama Gomez's also proffered photographic and video evidence regarding the conditions of prisons in Ecuador. (ECF No. 21 [seeking permission to file the videos and photos under seal]). The Court permitted the filing of the photographs and videos under seal, but did not opine as to their admissibility. (*See* October 3, 2024 ECF Minute Entry.)

Although courts are not bound by the Federal Rules of Evidence in extradition proceedings, 18 U.S.C. § 3190 requires that any proffered evidence "be properly and legally authenticated[.]" 18 U.S.C. § 3190. The videos submitted by Lalama Gomez depict horrific acts of violence that he claims accurately reflect the conditions in Ecuadorian prisons. The videos and photographs were submitted to the Court, however, without any authentication information. At the hearing, counsel for Lalama Gomez stated that the videos and photographs "portray widely publicized incidents in Ecuador that were reported in the press" and that the videos were obtained by Mr. Cordova, the proposed expert witness. (Tr. at 40:08-40:25.) Lalama Gomez offered no information regarding how Mr. Cordova obtained the photographs and videos. Moreover, Mr. Cordova's affidavit submitted after the hearing does not offer any additional information about the source of the evidence. (*See* ECF No. 28-1.) Accordingly, the photographs and videos are inadmissible because they are not properly authenticated pursuant to 18 U.S.C. § 3190.

Even assuming the evidence had been properly authenticated, the Court would still be unable to consider it because it does not fall within the limited parameters of permissible evidence offered by a relator in the context of extradition proceedings. Similar to the proffered testimony by Mr. Cordova, the photographs and videos of prison conditions in Ecuador do not explain the Government's evidence against Lalama Gomez. Indeed, Lalama Gomez concedes that the evidence is being offered for the purpose of urging the Court to create an exception to the "rule of

7

non-inquiry." (Tr. 41:13-42:04; ECF No. 17 at 11-13.) As explained in further detail in section II.F, *infra*, the Court declines to invoke the exception to the rule of non-inquiry. Accordingly, Lalama Gomez's offer of video and photographic evidence is denied.

### B. Authority and Jurisdiction

The extradition statute authorizes proceedings to be conducted by "any magistrate judge authorized so to do by a court of the United States." 18 U.S.C. § 3184. In addition, the Eastern District of New York's Local Criminal Rule 59.1(b) specifically authorizes magistrate judges to exercise the jurisdiction set forth in 18 U.S.C. § 3184. Consequently, this Court has authority to conduct these proceedings. Furthermore, this Court has jurisdiction over Lalama Gomez, as he was located and arrested in the Eastern District of New York. *See* 18 U.S.C. § 3184 (authorizing a magistrate judge to conduct extradition proceedings with respect to "any person found within his jurisdiction").

### C. The Treaty

The extradition statute provides for extradition in instances in which a treaty or convention is in force between the requesting State and the United States. *See* 18 U.S.C. § 3184. Here, the Government has submitted the Declaration of Amy Lindsay of the Department of State, which attests that there is a treaty in full force and effect between the United States and Ecuador, and a copy of the Treaty. (Extradition Hearing Ex. A.) Lalama Gomez does not challenge that the Treaty is in force. Accordingly, this Court concludes that the Treaty is in full force and effect.

### D. The Alleged Crime

The 1872 extradition treaty between the United States and Ecuador ("Treaty") obliges the United States to surrender fugitives under the circumstances defined by the Treaty. The Treaty provides that individuals accused of certain enumerated offenses "shall be delivered up, in

8

accordance with the provisions of this treaty." Treaty, Article II. The enumerated offenses in the Treaty include "[t]he crime of rape[,]" Treaty, Article II(2), and "attempt to commit" rape. Treaty, Article II(21); *see also* 1939 Supplemental Treaty, Article II (stating that the Supplemental Treaty "shall be considered as an integral part of the said Extradition Treaty of June 28, 1872" and the crimes added by the Supplemental Treaty "shall be applicable under appropriate circumstances to all the crimes listed in the said Treaty of June 28, 1872.")

It is well-established that, in fulfilling its duty under Section 3184, the Court is obliged to liberally construe the applicable extradition treaty to effectuate the purpose of the treaty: the surrender of fugitives to the requesting country. *See Factor v. Laubenheimer*, 290 U.S. 276, 303 (1933) ("Extradition treaties are to be liberally, not strictly, construed."); *Valentine v. United States ex rel. Neidecker*, 299 U.S. 5, 10 (1936) ("It is a familiar rule that the obligations of treaties should be liberally construed so as to give effect to the apparent intention of the parties."). Furthermore, "[a]lthough not conclusive, the meaning attributed to treaty provisions by the Government agencies charged with their negotiation and enforcement is entitled to great weight." *Sumitomo Shoji Am., Inc. v. Avagliano*, 457 U.S. 176, 184-85 (1982). Indeed, when the contracting parties to a treaty "both agree as to the meaning of a treaty provision, and that interpretation follows from the clear treaty language, [the Court] must, absent extraordinarily strong contrary evidence, defer to that interpretation." *Id.* at 185; *see also Air France v. Saks*, 470 U.S. 392, 399 (1985) ("[I]t is our responsibility to give the specific words of the treaty a meaning consistent with the shared expectations of the contracting parties.").

Applying the principles set forth above, Lalama Gomez's conduct falls within the scope of the Treaty. Ecuador's submissions establish that Lalama Gomez was charged for the offense of sexual abuse, in violation of Article 170 of Ecuador's Criminal Code, for conduct that included

9

putting his finger in the Victim's buttocks, touching the Victim's vagina and breasts, and kissing the Victim while he masturbated.  (*See* Extradition Exhibits B-D.)  The declaration submitted by the Department of State through Attorney Amy Lindsay provides that "[t]he offense for which extradition is sought is covered by Article 2nd, Item [] 2nd … of the Treaty."  (Extradition Exhibit A, Lindsay Declaration at 2 ¶ 5.)  Additionally, in evaluating the extradition request in Ecuador, the National Court of Justice specifically found that "[t]he crime of sexual abuse, subject of the extradition request, is contained in paragraph 2 of article 2 of the Extradition Treaty[.]"  (ECF No. 3-1, Court Ruling Initiating Extradition Proceedings at 101.)  Therefore, because both the United States Department of State and National Court of Justice in Ecuador "agree as to the meaning of [the] treaty provision[,]" *Avagliano*, 457 U.S. at 184-85, the Court defers to their interpretation of the Treaty and finds that the crime of "sexual abuse" is covered by Article II(2) of the Treaty.

Lalama Gomez's argues that the charged offense of "sexual abuse" is not an extraditable crime under the Treaty.  (ECF No. 17 at 6-9.)  Based on a constrained reading of the Treaty's text, Lalama Gomez argues that sexual abuse is a different crime than rape under both Ecuadorian law and New York law.  (*Id.*)  According to Lalama Gomez, since sexual abuse is not equivalent to rape, and since the Treaty only lists rape as an extraditable offense, the Court cannot certify his extradition.  (*Id.* at 9.)  This argument is unpersuasive for four reasons.

*First*, "[e]xtradition treaties are to be liberally, not strictly, construed." *Laubenheimer*, 290 U.S. at 303.  Applying Lalama Gomez's rigid interpretation of the Treaty would undermine the Treaty's purpose of facilitating international cooperation between the United States and Ecuador in the prosecution of serious crimes. *Laubenheimer*, 290 U.S. at 298 (stating that "considerations peculiarly applicable to treaties for extradition" necessitate that treaties "be construed more liberally than a criminal statute or the technical requirements of criminal procedure.")

*Second*, the Court has a "responsibility to give the specific words of the treaty a meaning consistent with the shared expectations of the contracting parties[,]" *Saks*, 470 U.S. at 399, to "give effect to the apparent intention of the parties." *United States ex rel. Neidecker*, 299 U.S. at 10. Here, if the Court were to adopt Lalama Gomez's restrictive reading of the Treaty's text, it would directly contradict the contracting parties' interpretation of Article II(2), and thereby undermine the purpose of the underlying extradition treaty.

*Third*, the Ecuadorian prosecutor's decision to charge Lalama Gomez with "sexual abuse" rather than "rape" is immaterial to the Court's analysis as to whether Lalama Gomez is extraditable because although sexual abuse "is not specifically enumerated in the Treaty, it need not be to qualify as an extraditable offense, so long as the offense charged is sufficiently equivalent to one or more of the listed offenses." *Sacirbey v. Guccione*, No. 05 Civ. 2949, 2006 WL 2585561, at *8 (S.D.N.Y. Sep. 7, 2006), *rev'd on other grounds*, 589 F.3d 52 (2d Cir. 2009). Although the Treaty does not specifically list "sexual abuse" in the list of extraditable offenses, extradition for "sexual abuse" may nevertheless be permissible so long as "the underlying conduct constitutes an extraditable offense." *In re Extradition of Handonovic*, 829 F. Supp. 2d 979, 989 (D. Or. 2011) (rejecting relator's "overly constrained interpretation of the [extradition] treaty" and holding that relator could be extradited for war crimes because the underlying conduct constituted extraditable offenses). Indeed, in *Cordero-Rezabala v. United States*, the District of New Jersey held that the Ecuadorian crime of sexual abuse is an extraditable offense under the Treaty under allegations similar to those levied against Lalama Gomez. No. 24 Civ. 4010, 2024 WL 1673366, at *3-4 (D.N.J. April 18, 2024) (alleging that the relator "grabbed the victim, pulling her on top of him, putting his hands on her buttocks and vagina, wanting to put his fingers in her, while he was wearing boxers."). Thus, Lalama Gomez's alleged conduct, which includes putting his fingers in

11

a child's anus and vagina, "is sufficiently equivalent to" the Treaty's listed crimes of rape and attempted rape to qualify as an extraditable offense. Treaty, Article II(2), (21).

*Fourth*, Lalama Gomez's argument seems to imply that since the elements for rape under New York law differ from the elements of sexual abuse under Ecuadorian law, he cannot be extradited. This argument misconstrues the doctrine of dual criminality.[2] The dual criminality standard is satisfied if the conduct underlying the offense is punishable under both the law of the requesting nation and the United States. *Lo Duca*, 93 F.3d at 1111-12. This conduct-based test is not confined to the statutory text: rather the focal point of the analysis is "the conduct of the accused[,] to see if it falls within the proscription of American criminal law." *Id.* at 1112. As the Supreme Court explained over a hundred years ago, dual criminality "does not require that the name by which the crime is described shall be the same; nor that the liability shall be coextensive, or, in other respects, the same in the two countries." *Collins v. Loisel*, 259 U.S. 309, 312 (1922).

Even if the doctrine of dual criminality were to apply here, it is satisfied because Lalama Gomez's alleged conduct is punishable under both federal and state law. For example, his alleged conduct could be charged under 18 U.S.C. § 2242, which provides that anyone who "knowingly … engages in a sexual act with another person without that person's consent, to include doing so through coercion … shall be … imprisoned for any term of years or for life." Similarly, New York Penal Law § 130.60, provides that an individual is guilty of sexual abuse in the second degree if "he or she subjects another person to sexual contact and when such other is: (1) [i]ncapable of

---

[2] The Government notes in its opening brief and response, that the Court need not engage in the dual criminality analysis because the extraditable offenses are exhaustively listed in the Treaty. (ECF No. 16 at 13.) The 1939 Supplemental Treaty states that only the added offenses listed in paragraphs 7 to 21 require the Court to consider whether the listed offenses are "punishable in the United States and Ecuador with a penalty of not less than one year in prison." Because "the crime of rape" is not one of the offenses listed in paragraph 7 to 21, the Court agrees with the Government that it need not conduct a dual criminality analysis.

12

consent by reason of some fact other than being less than seventeen years old; or (2) [l]ess than fourteen years old." N.Y.P.L § 130.60. Therefore, because the conduct Lalama Gomez is accused of is punishable under both federal law and New York state law, the dual criminality requirement is satisfied. Accordingly, the alleged crime falls within the scope of the Treaty.

### E. Probable Cause

#### 1. Applicable Law

Probable cause exists where "[t]he evidence presented ... 'support[s] a reasonable belief that [the fugitive] was guilty of the crimes charged.'" *Austin v. Healey*, 5 F.3d 598, 605 (2d Cir. 1993) (quoting *Ahmad v. Wigen*, 910 F.2d 1063, 1066 (2d Cir. 1990)). To determine whether there is probable cause, courts use a "flexible, common sense standard" taking into account the "totality of the circumstances." *Illinois v. Gates*, 462 U.S. 213, 239 (1983). This standard permits a finding of probable cause based on "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *United States v. Howard*, 489 F.3d 484, 491 (2d Cir. 2007) (quoting *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006)). Such information may be based on "unsworn statements of absent witnesses." *Collins*, 259 U.S. at 317. Because hearsay evidence is admissible, *Melia*, 667 F.2d at 302, courts conducting this analysis must "closely examine the requesting country's submissions to ensure that any hearsay bears sufficient indicia of reliability to establish probable cause." *United States v. Pena-Bencosme*, No. 5-M-1518, 2006 WL 3290361, at *2 (E.D.N.Y. Nov. 13, 2006). However, the Court need not delve into questions of the weight of the evidence offered by the demanding country, *In re Extradition of Marzook*, 924 F. Supp. 565, 592 (S.D.N.Y. 1996), nor credibility, *United States v. Hunte*, No.04-M-0721, 2006 WL 20773, at *6 (E.D.N.Y. Jan. 4, 2006), as those issues are reserved for trial. Indeed, the extraditing magistrate judge's task is only

13

to determine whether there is "competent legal evidence which ... would justify [the relator's] apprehension and commitment for trial if the crime had been committed in th[e] state." *Collins*, 259 U.S. at 315.

### 2. Evidence Establishing Probable Cause

Here, probable cause exists to believe that Lalama Gomez committed the offense of sexual abuse. Ecuador's submissions, which exceed 200 pages, provide clear and detailed allegations of Lalama Gomez sexually assaulting the Victim. The Victim, whose statements were corroborated by her mother and a psychological report drafted by Ecuadorian authorities, include vivid details of the alleged abuse committed by Lalama Gomez. Specifically, the Victim and her mother stated that from August 2016 through September 2017, Lalama Gomez sexually abused the Victim and threatened to kill the Victim's Mother and her brothers if the Victim told anyone about the abuse. (ECF No. 3-1, Court Ruling Initiating Extradition Proceedings at 129-30, 134.) According to the submitted evidence, Lalama Gomez allegedly entered the Victim's room, obscenely touched her breasts and vagina, and kissed her while he masturbated. (*Id.* at 134.) As a result of the alleged sexual abuse, the Victim suffered emotional harm that has manifested physically, including sleepwalking, headaches, stomachaches, and excessive sweating. (*Id.* at 135.)

Lalama Gomez argues that probable cause does not exist because: (1) there is no "objective physical evidence" to corroborate the Victim's statements; (2) Ecuador's summary of the forensic psychological report on the Victim is unreliable; (3) there are inconsistencies in the Victim's prior statements provided to the physiologist in preparation of the psychological report; (4) the Victim's mother had a motivation to lie. None of these arguments are persuasive. Regarding the first argument, it is well-established that "unsworn statements of absent witnesses may be acted upon by the committing magistrate." *Collins*, 259 U.S. at 317; *see also Ferrandina*, 478 F.2d at 905

("The judge's refusal to examine the credibility of the testimony and statements included in the translated material was clearly proper, since the declarants were not before him."). Second, caselaw is clear that "[t]he primary source of evidence for the probable cause determination is the extradition request, and any evidence submitted in it is deemed truthful for purposes of this determination." *In re Extradition of Atta*, 706 F. Supp. 1032, 1050-51 (E.D.N.Y. 1989) (citing *Collins*, 259 U.S. at 315-16)). Lastly, the third and fourth arguments would require the Court to exceed its limited role in the extradition process and make credibility determinations, which are more appropriately addressed by the Ecuadorian court during Lalama Gomez's trial. *E.g.*, *Kapoor v. Dunne*, 606 F. App'x 11, 12 (2d Cir. 2015) (citing *Ferrandina*, 478 F.2d at 905) (holding that credibility determinations should "properly await trial in [the country seeking extradition].").

Accordingly, the Court concludes, based on the totality of evidence, that there is probable cause to believe that Lalama Gomez committed the offense of sexual abuse.

### F. Rule of Specialty

Lalama Gomez argues that the rule of specialty would be violated if he is extradited to Ecuador for the crime of rape but is then tried for committing sexual abuse. (ECF No. 28 at 2.) The rule of specialty is a principle of international law that bars the requesting country from prosecuting the relator for a crime not listed in the extradition treaty. *United States v. Rauscher*, 119 U.S. 407 (1896). Since the Supreme Court's recognition of the rule in *Rauscher*, "the principle has been extended to bar prosecution for crimes listed in the treaty but for which extradition, for whatever reason, was not granted." *Ferrandina*, 478 F.2d at 905 (citing *Johnson v. Browne*, 205 U.S. 309 (1907)). The rule of specialty is often raised as an objection to prosecution where the relator is arrested in a foreign country and surrendered to the United States to face criminal charges. *See, e.g.*, *United States v. Jurado-Rodriguez*, 907 F. Supp. 568, 573 (E.D.N.Y. 1995) (moving to

15

dismiss criminal indictment because of, amongst other reasons, the rule of specialty following relator's extradition to United States from Luxembourg); *United States v. Campbell*, 300 F.3d 202, 205-06 (2d Cir. 2002) (appealing conviction based, in part, on the rule of specialty following relator's extradition to the United States from Costa Rica). However, the Second Circuit has noted that the rule's "self-imposed restraint . . . need not necessarily imply that in the converse situation, when courts of this country are examining an extradition request from a foreign nation, we should seek to impose limits on the scope of subsequent prosecution of a person who is to be extradited for at least one crime in any event." *Ferrandina*, 478 F.2d at 906. Lalama Gomez's extradition falls within the "converse situation" discussed in *Ferrandina*. *Id.* A holding in favor of Lalama Gomez's argument on this issue would be "advisory in character" because this Court has no power to create binding obligations on an Ecuadorian court. *Id.* Therefore, "it should be left to the Secretary of State to determine whether to seek to impose any limitations" on Lalama Gomez' subsequent prosecution in Ecuador. *Id.*

### G. Rule of Non-Inquiry

Lalama Gomez argues that the dangerous conditions in Ecuadorian prisons justify an application of an exception to the rule of non-inquiry. (ECF No. 17 at 11-13.) The rule of non-inquiry is "a firmly established principle that precludes courts from examining the procedures or treatment awaiting the surrendered fugitive in the requested jurisdiction—and requires that it defer to the executive branch on such matters." *Mujagic*, 990 F. Supp. 2d at 227-28. Because of the rule's applicability, the presence of humanitarian considerations cautioning against extradition are determined by the Secretary of State. *See, e.g., Wigen*, 910 F.2d at 1067 ("it is the function of the Secretary of State to determine whether extradition should be denied on humanitarian grounds"). In *Gallina v. Fraser* 278 F.2d 77, 79 (2d Cir. 1960), however, the Second Circuit stated, in *dicta*,

16

that it could "imagine situations where the relator, upon extradition, would be subject to procedures or punishment so antipathetic to a federal court's sense of decency as to require reexamination of the principle set out above." Although a theoretical exception has been recognized, "the *Gallina* court's posited exception to non-inquiry has never been applied to prevent federal certification of extradition." *Leon Heras v. Warden, Metro. Det. Ctr., Brooklyn*, No. 23 Civ. 05057, 2023 WL 8473838, at *4 (E.D.N.Y. Dec. 7, 2023).

Lalama Gomez asserts that there have been numerous incidents of mass killings of prisoners within Ecuador's prisons, widespread evidence of torture, and inadequate food and medical care. (ECF No. 17 at 12.) Although the Court is sensitive to this issue, the consideration of such humanitarian concerns are generally within the province of the Secretary of State. *See, e.g.*, *Sindona v. Grant*, 619 F.2d 167, 174 (2d Cir. 1980) ("[T]he degree of risk to [the relator's] life from extradition is an issue that properly falls within the exclusive purview of the executive branch."). The Court therefore declines to invoke the exception to the rule of non-inquiry.[3] The Court, however, urges the Secretary of State to give serious consideration to Lalama Gomez's humanitarian concerns.

---

[3] Lalama Gomez also argues that the extradition request should be denied because of "special circumstances", such as prosecutorial delay and health issues. (ECF No. 17 at 16-18.) The examination of whether "special circumstances" are present, however, is limited to whether a relator is eligible for bail pending an extradition hearing. *See, e.g., United States v. Leitner,* 784 F.2d 159, 161 (2d Cir. 1986) (discussing special circumstances in appeal from district court's order denying bail pending extradition); *In re Barker*, No. 23-mj-27, 2023 WL 1967576, at *3-4 (E.D.N.Y. Feb. 13, 2024) (analyzing special circumstances to determine whether relator is eligible for bail); *In re Heras*, No. 22-mj-271, 2022 WL 3909174, at *4-8 (E.D.N.Y. Aug. 31, 2022) (same). Indeed, this Court found that special circumstances were not present in denying Lalama Gonez's application for bail pending extradition. (*See generally* ECF No. 19.)

## **CONCLUSION**

For the foregoing reasons, the Court certifies the extradition of Mario Enrique Lalama Gomez to Ecuador on the offense of sexual abuse, and orders Lalama Gomez to remain in the custody of the United States Marshal pending further decision on extradition and surrender by the Secretary of State pursuant to 18 U.S.C. § 3186.

**SO ORDERED**.

Dated: Brooklyn, New York
    November 1, 2024

*Lara K. Eshkenazi*
LARA K. ESHKENAZI
UNITED STATES MAGISTRATE JUDGE